# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| TABITHA DAY, Mother of minor child, E.D., <br><br> Plaintiff, <br><br> vs. <br><br> CEDAR RAPIDS COMMUNITY SCHOOL DISTRICT, et al., <br><br> Defendants. | No. C19-137-LTS <br><br><br> **ORDER ON DEFENDANTS' MOTION TO DISMISS** |

## I.  INTRODUCTION

This case is before me on a motion (Doc. No. 7) to dismiss by defendants Cedar Rapids Community School District (District), Grant Wood Area Education Agency (AEA), Sandra Byard and Cindy Fagan. Plaintiff Tabitha Day, mother of minor child, E.D., has not filed a response and the time for doing so has expired. I find that oral argument is not necessary. *See* Local Rule 7(c).

## II.  FACTUAL ALLEGATIONS

Day has filed a claim pursuant to 42 U.S.C. § 1983, along with claims alleging violations of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973, Titles VI and VII of the Civil Rights Act of 1964; Title IX of the Education Amendments of 1972; the Patient Protection and Affordable Care Act; and the Individuals with Disabilities Education Act (IDEA). *See* Doc. No. 5, 5-1. She claims E.D. was denied access to public school because her attendance was prohibited and restricted due to her disability. *See* Doc. No. 5 at 3. Defendants note that Day pursued similar claims in an administrative due process complaint filed against the District and the AEA pursuant to the IDEA, 20 U.S.C. § 1400 *et seq*. They argue that because Day explicitly references the administrative decision addressing that complaint,

the decision is embraced by the pleadings and I may consider it in ruling on the motion to dismiss. *See* Doc. No. 7-2 at 3. I agree. *See Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012). As such, I will start with a discussion of that decision as it provides helpful background to Day's complaint.

E.D. suffers from a variety of serious medical issues, including Lennox-Gastaut Syndrome (an intractable form of epilepsy), asthma, impaired mobility and developmental delays. She is prone to having absence, cluster, and tonic-clonic (grand mal) seizures. *See* Doc. No. 7-1 at 2. She has had an Individualized Education Program (IEP) since she began attending school in the District and the plan was unchanged from May 2010 through the end of the 2017-2018 school year. E.D.'s neurologist determined that medical intervention for E.D.'s seizures is required only when her seizures last 10 minutes. He prescribed a "rescue medication" known as Diastat. *Id*. at 3. School staff administered Diastat to E.D. on three occasions during each of the 2014-2015, 2015-2016 and 2016-2017 school years. They administered it once in the 2017-2018 school year and once in 2018-2019 school year. On each of the 11 occasions in which they administered Diastat, E.D. returned to class without incident. *Id*.

Since May 2010, E.D.'s Individual Health Plan (IHP) has provided a protocol for dealing with her seizures while in school. The IHP incorporated an Emergency Protocol for seizures that required health staff to respond to E.D.'s classroom at the first sign of a seizure. Staff would then use a magnet to activate E.D.'s VNS[1] device and could repeat the procedure every minute for five minutes if necessary. If the seizure lasted more than five minutes, staff administered Diastat. If the seizure continued more than five minutes after administering Diastat, staff would call 911. *Id*.

Upon learning that the District had varying protocols with regard to whether a

---

[1] In 2013, E.D. had a vagus nerve stimulator (VNS) device implanted in her upper left chest that can be activated by swiping a magnet across the implant location. The purpose of the device is to prevent or lessen seizure activity.

child stayed at school or was sent home following the administration of Diastat, the District's Health Services Facilitator[2] held a meeting with all school nurses. The nurses reviewed medical literature and other districts' practices. The medical literature discussed the possibility of respiratory depression following administration of Diastat in children. The consistent practice in other districts was to send children home after the administration of Diastat. The nurses agreed that after administering Diastat, children should be sent home and adopted this as the new policy or protocol. *Id.*

E.D.'s Emergency Seizure Protocol and IHP were amended in August 2018 to reflect the new protocol. Her IEP refers to the IHP and Emergency Protocol in three instances. It states that her health needs will be "addressed in the Health Plan as a part of the student's health records," refers to the "IHP/Emergency Protocol" following a discussion of the protocol for responding to her seizures, and in listing her health services, states "see IHP for details." *Id.* at 5.

E.D. moved to a new school for the 2018-2019 school year. The school nurse[3] was in charge of drafting a new health plan and attempted to contact Day prior to the start of school. She was unable to reach her by phone but spoke to her in person at an open house the day before the start of school. They discussed responses to E.D.'s seizures, including Diastat, and the nurse informed Day about the policy change to send students home after administering Diastat. Day disagreed with the policy. The nurse attempted to contact E.D.'s physician for input but did not receive a response until October. The nurse sent a copy of the new IHP and Emergency Protocol, which contained the new Diastat policy, home with E.D. after school started.

Day responded by crossing out language in the Emergency Protocol and adding

---

[2] While the name is redacted in the administrative decision, it appears from Day's complaint that defendant Byard is the Health Services Facilitator for the District. *See* Doc. No. 5 at 3. *See also* Doc. No. 7-2 at 4 (describing Byard's and Fagan's positions).

[3] While the name is redacted in the administrative decision, it appears from Day's complaint that defendant Fagan is the school nurse at E.D.'s new school. *Id.*

handwritten notes and suggestions in other parts and gave the document back to the school nurse. She did not sign the document and noted that the new policy was added after eight years of not being required, was "not protocol" and had "nothing to do with her safety." *Id.* at 6. She also spoke to E.D.'s teacher, the principal and school nurse.

On the third day of the school year, E.D. suffered a seizure requiring the administration of Diastat. Pursuant to the policy, the school called Day and sent E.D. home. Day kept E.D. home from school the remainder of the school year claiming that she was concerned the school nurse would disregard the guidance of E.D.'s physician and that E.D. had been experiencing increased seizures requiring Diastat a couple times per week. *Id.* at 6-7.

The school scheduled an IEP team meeting for September 10, 2018, between the school nurse, the school principal, E.D.'s special education teacher and Day. Day explained that E.D. had been experiencing increased seizures. District personnel encouraged her to let E.D. return to school. They offered to re-evaluate the situation and discuss alternative arrangements if E.D.'s need for Diastat at school had, in fact, increased. The meeting did not result in an agreement between Day and the District. Day kept E.D. out of school and filed a due process complaint.

Day argued that nursing services, as embodied in the IHP, are "related services" subject to regulations that provide certain procedural protections for changing an IEP, such as parental input. Second, she argued that E.D. was denied a free appropriate public education (FAPE) because the District's new Diastat policy was not individualized to meet E.D.'s needs and was not evidence-based. *Id.* at 10. Following a hearing, the administrative law judge (ALJ) found in favor of the District on both grounds. With regard to whether nursing services are related services, the ALJ stated:

> [I]t cannot be said that the Complainant's right to parental participation was impeded, that the child's right to FAPE was denied, or that there was a deprivation of any educational benefit by virtue of the processes undertaken. The school nurse, through a protocol proposed by the District's Health Services Facilitator, drafted the child's IHP in a manner with which the

4

> mother disagreed. The nurse sought and received input from the parent about the offending portion of the IHP. Iowa regulations envision and authorize such a change in a student's IHP. There was no requirement that an IEP team be convened and pass on a modification to an IHP that is later integrated into the IEP. However, after the mother's concerns were heard, an IEP team meeting was promptly held on September 10 to discuss the Diastat protocol. The disagreement remained, and the mother chose to contest the matter through a Due Process complaint, as was her right.

*Id*. at 14-15. With regard to her second argument, the ALJ found that at the time the IHP and Emergency Protocol were integrated into the IEP, the IEP was "objectively reasonable and would have served fully to provide for the child's educational needs and her health needs." *Id*. at 18. He noted the decision was based on a justifiable reading of medical literature and authoritative guidance from knowledgeable and relevant groups as well as E.D.'s historical need for Diastat while at school. *Id*. at 18. While new information later surfaced from E.D.'s physician and another physician expert, as well as information from Day concerning the frequency of E.D.'s seizures requiring Diastat during the 2018-2019 school year, the ALJ reasoned the District did not have access to that information that could have informed its decision. *Id*. at 18. The ALJ concluded that none of E.D.'s absences from school during the 2018-2019 school year could be attributed to the District or the school and it did not deny E.D. a FAPE. *Id*. at 18-19. He did, however, recommend that based on the new information presented at the hearing, the District convene an IEP meeting and reassess the protocol's specific application to E.D. *Id*.

The ALJ issued his decision on September 13, 2019. Doc. No. 7-1 at 20. Day filed her motion for leave to proceed in forma pauperis and complaint in this court on December 13, 2019. She submitted a supplement to her complaint on January 15, 2020. *See* Doc. Nos. 3. She alleges the following facts in support of her claim:

> Cindy Fagan the part time nurse new to the district changed [E.D.]'s IEP by changing her IHP that is included within her IEP and uploaded to IDEA as an associated file. Without the IHP her IEP is not sufficient in addressing her needs per IDEA requirements. Cindy Fagan made this

5

> change without the IEP team she did not consult anyone including the prescribing physician or any organization on the necessity of the requirement that exclude E.D. from school on the basis of her disability. For 9 years the protocol for seizures has been the same it has been effective and there have not been any issues related to Diastat use. I was not aware of her intention to alter the IHP and did not give my consent. I was denied the right to participate in the decision making process there was never a IEP meeting to discuss what was appropriate for E.D. The nurse unilaterally changed the IHP effectively changing her IEP and placement. The special education teacher Erin was involved witnessing some of the interactions that took place, she did not support the position that E.D. must not go to school or will have to leave simply because she needed a prescribed medication. She was aware of and had no issue with the protocols as they had been successfully in place for many years she along with Cindy and myself had a meeting in the end of May prior to the start of school.

*Id.* at 4. Attached to her complaint is another section titled "Additional Claims" in which Day alleges violations of the ADA and Section 504 based on the policy. *Id.* at 7. She also disagrees with the findings of fact in the administrative decision and states she has additional evidence. *Id.* at 8. She alleges the school nurse violated the IDEA by altering the IEP without including anyone in the decision. *Id.* at 8-9. She also alleges violations of Titles VI and VII of the Civil Rights Act of 1964. Her supplement lists the following statutes: Title IX of the Education Amendments of 1972; Section 504 of the Rehabilitation Act of 1973; 42 U.S.C. § 2000d-7; 42 U.S.C. § 18116; 20 U.S.C. §§ 1414-15. *See* Doc. No. 5-1.

Defendants seek dismissal of Day's complaint on three bases: (1) to the extent she is attempting to relitigate her IDEA claims under other federal statutes rather than seeking judicial review of the administrative decision, they argue her claims are barred by res judicata, (2) her § 1983 claim may not be based solely on violations of the IDEA and (3) her other statutory claims fail to state claims for relief that are plausible on their face. *See* Doc. No. 7-2 at 2.

6

## III. APPLICABLE STANDARDS

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S. Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S. Ct. 1955.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S. Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual*

7

Case 1:19-cv-00137-LTS-MAR   Document 8   Filed 05/05/20   Page 7 of 13

"plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory.  *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6).  On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil Procedure 10(c).  Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment.  *Id*.

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead.  The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days.  *See* Fed. R. Civ. P. 15(a)(1)(B).  Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to do so.  When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment

suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

## IV. ANALYSIS

### A. Are Day's Claims Barred by Res Judicata?

Defendants argue that res judicata bars Day's claims to the extent she is attempting to relitigate her IDEA claims under other statutes rather than seeking judicial review pursuant to 20 U.S.C. § 1415(i)(2). "IDEA declares as its first purpose 'to ensure that all children with disabilities have available to them a free appropriate public education.'" *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 753 (2017) (quoting 20 U.S.C. § 1400(d)(1)(A)). As part of the IDEA, Congress established procedural safeguards. *See* 20 U.S.C. § 1415(a). "One safeguard is an opportunity to present complaints about the provision of a FAPE in 'an impartial due process hearing.'" *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 947 (8th Cir. 2017). "The outcome of the administrative review hearing may then be disputed in the district court." *Id.* (quoting *J.B.*, 721 F.3d at 592). Under Iowa regulations implementing the IDEA, a decision made in a due process hearing is final except that a party may appeal the decision by filing a civil action in state or federal court. *See* Iowa Admin. Code 281-41.514. Section 1415(i)(2) provides:

> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." The action must be brought within 90 days from the date of the decision of the hearing officer or in explicit time limitation set by the state.

9

Day's supplement (Doc. No. 5-1) to her complaint explicitly references 20 U.S.C. §§ 1414-15. Her complaint also alleges IDEA violations and errors by the ALJ in the administrative decision. Therefore, it appears Day is seeking judicial review of the administrative decision under the IDEA rather than attempting to relitigate those claims through other federal statutes. I decline to dismiss any of Day's claims on this basis.

### B.  Can Day Sustain a § 1983 Claim Based on Violations of the IDEA?

In her § 1983 claim, Day seeks "money damages for the year of missed school, increased cost of care at home, missed work," in addition to actual and punitive damages. *See* Doc. No. 5 at 5. Defendants argue that IDEA violations may give rise to a § 1983 claim only if they also support a claim of a violation of constitutional rights. *See* Doc. No. 7-2 at 11 (citing *D.L. v. Waukee Cmty. Sch. Dist.*, 578 F. Supp. 2d 1178, 1187-88 (S.D. Iowa 2008)). Because Day has not alleged any violations of her constitutional rights, defendants argue her § 1983 claim must be dismissed as a matter of law.

I agree. In her complaint, Day alleges the following rights are being violated: "Denied access to public school, attendance prohibited and restricted due to disability." *See* Doc. No. 5 at 3. She does not allege any violations of constitutional rights. "When a plaintiff fails to state a violation of a right secured by the Constitution and laws of the United States, a § 1983 claim cannot succeed." *Wong v. Minn. Dept. of Human Servs.*, 820 F.3d 922, 935 (8th Cir. 2016). As such, her § 1983 claim is dismissed as a matter of law. *See A.W. v. Jersey City Public Schools*, 486 F.3d 791, 802-06 (3d Cir. 2007) (concluding Congress did not intend § 1983 to be available to remedy violations of the IDEA or section 504 of the Rehabilitation Act).

### C.  Other Statutory Claims

Defendants argue that Day's other statutory claims should be dismissed for lack of factual plausibility or a cognizable legal theory. Defendants address only the alleged violations under Titles VI and VII of the Civil Rights Act of 1964, the ADA and Section

10

504 of the Rehabilitation Act of 1973. Day, however, also alleges violations of Title IX of the Education Amendments of 1972 and the Patient Protection and Affordable Care Act (42 U.S.C. § 18116). *See* Doc. No. 5, 5-1.

Title VI prohibits discrimination on the basis of race, color or national origin in any program or activity receiving federal assistance and Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex or national origin. *See* 42 U.S.C. §§ 2000d, 2000e. Day does not allege discrimination on any of those bases. Day's claims based on Titles VI and VII of the Civil Rights Act of 1964 are dismissed for failing to state a claim upon which relief can be granted.

With regard to the ADA and Section 504 claims, defendants argue Day's allegations are vague and conclusory and there is not enough factual information in the complaint for defendants to substantively respond to her allegations. Doc. No. 7-2 at 13. A prima facie case under the ADA or Section 504 of the Rehabilitation Act requires Day to show: (1) that E.D. is disabled, (2) that the District is a place of public accommodation (under the ADA) and that it receives federal funding (under the Rehabilitation Act) and (3) defendants discriminated against E.D. on the basis of her disability. *Argenyi v. Creighton Univ.*, 703 F.3d 441, 447 (8th Cir. 2013). "Discrimination is defined as failure to 'make reasonable modifications in policies, practices, or procedures' that are 'necessary to afford . . . privileges, advantages, or accommodations to individuals with disabilities' or a failure to 'take such steps as may be necessary to ensure that no individual with a disability is . . . treated differently than other individuals because of the absence of auxiliary aids and services.'" *Id.* (citing 42 U.S.C. § 12182(b)(2)(A)(ii), (iii)). To establish a claim that defendants denied E.D. educational services, Day must also show that the district acted in bad faith or with gross misjudgment by departing substantially from accepted professional judgment, practice or standards. *See Estate of Barnwell v. Watson*, 880 F.3d 998, 1004 (8th Cir. 2018); *B.M. ex rel. Miller*, 732 F.3d 882, 887 (8th Cir. 2013).

Day is proceeding pro se and therefore her complaint is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). "While courts liberally construe pro se complaints, pro se litigants must still allege sufficient facts to state a plausible claim for relief." *Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). I find that Day has met the plausibility standard as to her ADA and Section 504 claims.[4] Day has alleged that E.D. has a disability, has been denied access to public school by prohibiting or restricting her attendance and that she has been denied access to public school based on her disability. *See* Doc. No. 5 at 3. *See Weixel v. Board of Educ. of City of New York*, 287 F.3d 138, 146-47 (2d Cir. 2002) ("At this early stage of the litigation, plaintiffs' complaint is sufficient to withstand dismissal if it alleges that (1) Rose has a disability for purposes of Section 504/ADA, (2) she is otherwise qualified for the benefit that has been denied, and (3) she has been denied the benefit by reason of her disability.") (internal footnote omitted). Indeed, defendants argue that Day's complaint is so similar to her due process complaint that she should be precluded from relitigating it in this action, demonstrating that defendants have the necessary information to respond to Day's ADA and Section 504 claims.

Because defendants have not sought dismissal of Day's other statutory claims, I will not address them at this time.

---

[4] Even if Day's complaint did not meet the factual plausibility standard, the appropriate remedy would be to allow her to amend her complaint rather than dismiss it. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (reasoning a pro se litigant should be given a chance to amend his or her complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment.").

## V.  CONCLUSION

For the reasons stated herein, defendants' motion (Doc. No. 7) to dismiss is **granted in part** and **denied in part**.  The motion is **granted** as to Day's § 1983 claim and claims under Titles VI and VII of the Civil Rights Act of 1964.  Those claims are **dismissed**.  The motion is **denied** as to all other claims.

**IT IS SO ORDERED.**

**DATED** this 5th day of May, 2020.

_____
Leonard T. Strand, Chief Judge